1
2
3
4
5
6        # UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  JEFF ALLEN KRICK, | Case No. 1:13-CV-0779-SMS |
| 10           Plaintiff, | |
| 11  v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| 12  CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| 13 | (Doc. No. 18) |
|           Defendant. | |
| 14 | |

15        Plaintiff Jeff Allen Krick, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks

16 judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

17 denying his application for disability insurance benefits pursuant to Title II and for supplemental

18 security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*)

19 (the "Act").  The matter is before the Court on the parties' cross-briefs, which were submitted,

20 without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.  Following a

21 review of the complete record and applicable law, the Court finds the decision of the Administrative

22 Law Judge ("ALJ") to be supported by substantial evidence.

23

24 I.   **Procedural History**

25        On May 10, 2010, Plaintiff applied for disability insurance benefits.  On May 10, 2010, he

26 filed an application for supplemental security income.  In both applications, Plaintiff alleged

27 disability beginning October 1, 2009.  The Commissioner initially denied the claims on September

28

16, 2010, and upon reconsideration, again denied the claims on February 11, 2011.  On March 15, 2011, Plaintiff filed a timely request for a hearing.

Plaintiff appeared and testified at a hearing on February 24, 2012.  Thomas C. Dachelet, an impartial vocational expert also appeared and testified.

On April 6, 2012, Administrative Law Judge Sherill A. LaPrade Carvalho denied Plaintiff's application.  The Appeals Council denied review on February 11, 2013.  On May 24, 2013, Plaintiff filed a complaint seeking this Court's review.

## II.   Administrative Record

**Plaintiff's testimony (February 24, 2012).**

Plaintiff, born June 23, 1970, lived with his wife and three children (ages 20, 18, and 12 years old at the time of the hearing).  Plaintiff did not complete high school and is able to communicate in English.  His most recent work experience was as a landscaper, fork lift driver, and tractor driver, for which he received no formal training.

Plaintiff testified that he experienced severe back pain, describing it as constant and sharp.  He testified that he cannot work due to the back pain and numbness in his hands.  He testified that the back pain started in about 2000.  Plaintiff explained that he experienced physical limitations in that he could not bend over, his knees pop when squatting, and he drops cups due to hand numbness.  Plaintiff stated that "if I step a certain way or something, I just lose all control of my left leg."

Plaintiff testified that the worked until 2009 doing yard work and lifting 50-100 pounds.  He also testified that he did not report his income in 2002-05 because it was a small amount.  When asked by the ALJ how many pounds he lifted working as a forklift operator, Plaintiff first said he did not lift anything.  Later, he testified he lifted 50-60 pounds at that job.  Plaintiff then testified that, at the time of the hearing, he did not know how much he could presently lift because he does not lift anything.  The ALJ asked whether Plaintiff lifted groceries or laundry, and Plaintiff testified that his

2

family performs these functions for him and he does not lift anything.  Plaintiff later estimated he could lift 10 pounds.

To manage his pain, Plaintiff reported taking over-the-counter medications as well as having a prescription for "Norco."  Plaintiff estimated his daily activities include spending an hour or less every day walking and standing, respectively; four to five hours per night sleeping; and five to six hours lying down.  Plaintiff testified that he spent most of his days "sitting, laying, watching TV."  Plaintiff testified that he managed his self-care, showering and bathing, but reported trouble shaving and occasional trouble getting in or out of the bathtub.  Plaintiff did not allege any mental impairments.  Plaintiff testified that he does not maintain his driver's license and does not drive.  Plaintiff testified he was six feet one inches tall and weighed 283 pounds.  Plaintiff reported that he had not had health insurance since approximately 2007.

Plaintiff testified he was not currently working and has not worked since 2009.  Plaintiff reported that he last worked as a landscaper doing yard work.  Plaintiff reported having previously worked as a forklift operator and tractor driver.

**Adult Function Report.**

In his undated Adult Function Report, Plaintiff left blank the section where he should describe his daily activities at his previous employment.  He listed his physical conditions as degenerative disk disease and arthritis.  Plaintiff wrote that his current medicine was Hydrocodone with APAP, prescribed by Clinica Sierra Vista for back pain.  Otherwise, Plaintiff included very little information on the adult function report.

In his exertion questionnaire, dated July 27, 2010, he wrote that he has middle and lower back pain, pinched nerves, and shooting pain down his left leg.  Plaintiff described that "if I step wrong, pain shoots down [my] left leg and hip, dropping me to the ground."  He reported that a usual day for him included showering and lying on his couch.  He wrote that he has to "keep adjusting myself from my couch to my bed" and when he visits the doctor "it is very uncomfortable in the

3

car." Plaintiff reported dressing and caring for himself. He could walk down the street for about 10 minutes, "up to the fourth house," before turning back. He reported that he does not climb stairs and lifts nothing more than 10 or 15 pounds. He wrote that he does not do his own grocery shopping, cleaning, driving, or yard work. Plaintiff stated that his family does everything. He listed his current medications as Dictofenac Sod (75 mg.), Indomethacin (25 mg.) and Hydrocodone/APAP (75/750 mg.).

In his pain questionnaire dated November 8, 2010, Plaintiff wrote that his pain as described began in 1998-99. He wrote that the pain occurs "all the time," but that rest did not relieve the pain. He reported that since 1999, he had been on the same medications as listed above, and that the medications "subside[sic] the pain, but not completely." He estimated that he could walk four houses down from his house, stand for 15 to 20 minutes at a time, sit an hour at a time by changing positions, and that his wife or a family member drove him where he needed to go.

**Medical Evidence.**

The ALJ properly considered the following medical records and opinions. The objective medical evidence, including diagnostic imaging of the thoracic spine, confirmed the presence of multilevel degenerative discs without evidence of fracture. However, Plaintiff concedes that the objective medical evidence is sparse with regard to the Plaintiff's treatment for his alleged impairments. The ALJ considered that Plaintiff alleged he did not have health insurance at the time of the hearing. The medical evidence confirmed that Plaintiff received treatment for his complaints of back pain and numbness from various physicians between April 2010 and December 2011. Medical records show no treatment between April 2, 2011 and October 30, 3011.

Prior to his alleged onset date, from January 22, 2008 to May 23, 2008, Plaintiff received chiropractic treatment by Jaime Reyna, D.C. Dr. Reyna diagnosed cervical syndrome, pain in the thoracic spine and sciatica for which she recommended chiropractic manipulation, muscle

4

1
2
stimulation, and ultrasound therapy.  Dr. Reyna noted that Plaintiff lost no time from work due to this condition and that he responded well to chiropractic treatment.

3
4
5
6
7
8
9
10
11
12
13
On August 27, 2010, Theodore Georgis, Jr., M.D., conducted a thorough examination and reviewed the available medical evidence, including treatment records and diagnostic imaging reports.  Dr. Georgis took a detailed history from Plaintiff.  Dr. Georgis noted that Plaintiff was given pain medications, but had not received therapy or shots in the mid-back.  Dr. Georgis reported that during his interview with Plaintiff, Plaintiff reported that he has constant pain in the mid-back, and described his pain as constant and sharp, radiating into the left leg off and on with numbness in the middle of the low back, but not the legs.  Plaintiff's report to Dr. Georgis continued that when the sharp pain went down Plaintiff's left leg, he would lose control of the leg and, as a result, he had fallen on multiple occasions.  Dr. Georgis noted that during the examination Plaintiff appeared to be in pain and had difficulty bending.  Dr. Georgis noted that Plaintiff walked with a limp on the left.

14
15
16
17
18
19
20
21
22
23
24
25
Upon Plaintiff's examination, however, Dr. Georgis found the contour, curvature, and alignment of Plaintiff's cervical spine to be normal.  Dr. Georgis found the thoracic kyphosis normal and there was no evidence of spasm.  Further examination revealed no evidence of joint pain or inflammation, and there was no evidence of subluxation, contractures, ankyloses, tenderness, swelling, or of gross deformities.  Plaintiff's range of motion examination appeared to be within normal limits.  Dr. Georgis diagnosed degenerative disc disease of the thoracic and lumbar spines with left lumbar radiculitis.  He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  Dr. Georgis stated that Plaintiff could sit, stand or walk six hours out of an eight-hour day with normal breaks.  Finally, Dr. Georgis opined that Plaintiff's exertional limitations included occasional stooping.

26
27
28
On September 10, 2010, the Disability Determination Service physician, Roger Fast, M.D., assessed the Plaintiff by a 75-minute interview and review of the objective medical evidence.  After his consultation with the Plaintiff, Dr. Fast concluded that he would be able to perform light

5

exertional activities with some postural restrictions.  In his residual functional capacity ("RFC") assessment, Dr. Fast concluded that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  Plaintiff could stand and/or walk about six hours in an eight-hour workday, and could sit six hours in an eight-hour workday.  He could frequently climb ramps, stairs, ladders, ropes, and scaffolds, and he could frequently balance, kneel, crouch or crawl, but only occasionally stoop.  Dr. Fast found that Plaintiff did not complain of pain or reposition himself during the entire 75-minute interview.   Dr. Fast also noted the lack of objective evidence prior to the date the Plaintiff's insured status expired.

In his reconsideration case analysis dated February 3, 2011, Sadda Reddy, M.D., noted that there was no additional information for the period of alleged disability and no errors on the face of the evidence.  Dr. Reddy recommended affirming the initial determination and the Disability Determination Service analyst agreed.  Dr. Reddy concluded that Plaintiff was capable of light exertional activities with some postural limitations as described by Dr. Fast.

The Plaintiff did not supply, and the ALJ noted the absence of, any medical source statement from a treating physician.

**Vocational Expert Testimony.**

Thomas C. Dachelet testified as vocational expert.  He classified Plaintiff's past relevant work as a forklift driver as a medium, semi-skilled occupation, lawn worker as a heavy, unskilled occupation, and farm equipment operator as a heavy, semi-skilled occupation.   Considering the limitations of Plaintiff's RFC and the Plaintiff's entire medical-vocational profile, Mr. Dachelet testified that a similarly capable individual would be unable to perform the demands of Plaintiff's previous positions.

**II.    Discussion**

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2009.  Plaintiff had not engaged in substantial gainful activity since October 1, 2009,

6

his alleged onset date.  Although Plaintiff had severe impairments (degenerative disc/joint disease of the thoracic spine and obesity), he did not have any presumptively disabling impairments set forth in the listing of impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  The ALJ found that Plaintiff had the physical RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand and/or walk 6 hours in an 8-hour workday; he can frequently climb ramps, stairs, ladders, ropes, and scaffolds; he can frequently balance, kneel, crouch, and crawl.  His exertional limitations include occasional stooping.  As the exertional requirements of Plaintiff's past relevant work exceeded his RFC, the ALJ determined that Plaintiff would be unable to perform his past relevant work.  The ALJ also determined that Plaintiff had the RFC to perform sedentary and light unskilled work.  The ALJ concluded that Plaintiff was not disabled because he could perform a significant number of jobs given his RFC.

## A.    **Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following questions:

Step one:    Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:    Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four. |

| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |

| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

## B.   <u>Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005).  Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld.  *Burch*, 400 F.3d at 679.

//

//

8

### C.    **Physicians' Opinions**

Plaintiff challenges the ALJ's analysis of his credibility, contending that the ALJ erred in rejecting Plaintiff's subjective reports of disability in favor of the opinions of the examining and non-examining physicians.  The Commissioner replies that the ALJ did not err in relying on the opinions of Drs. Georgis, Fast, and Reddy, who were consistent with the objective evidence of record and the conservative treatment provided to Plaintiff, and in rejecting Plaintiff's extreme subjective reports.  Based on the physicians' opinions, the ALJ concluded that the Plaintiff's subjective complaints were greater than the objective findings and not consistent with the objective evidence.

### **Plaintiff's Credibility.**

Before considering medical opinion, the Court finds it relevant to consider Plaintiff's credibility, an important factor in evaluating his claims.  The ALJ found that although Plaintiff's reported symptoms were consistent with objective medical evidence, his reports of the intensity, persistence, and limiting effects of his symptoms were not fully credible.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

In this case, the ALJ highlighted the paucity of evidence to support Plaintiff's allegations of total disability due to his alleged physical impairments. The ALJ noted that inconsistencies exist in Plaintiff's claims to the agency and his representations to other physicians and their objective records. For example, Plaintiff stated to the ALJ that he would lose control of his left leg and fall, yet there is no mention of any such event or any treatment for such an event in the objective medical reports other than Plaintiff's own self-serving reports. Also, despite Plaintiff's allegations that he is entirely disabled, the medical record reveals no treatment whatsoever between April 2, 2011 and October 30, 2011, despite the allegedly chronic and debilitating nature of Plaintiff's impairment. The Plaintiff complains of extreme back pain and numbness starting in 2000 (and in one instance he alleges it started as early as 1998-99). Yet, as Dr. Reyna noted for the period January through May, 2008, Plaintiff lost no time from work due to his condition. Indeed, Plaintiff testified to the ALJ that he cannot work due to back pain and numbness in both hands, and that this health condition began in about 2000. However, as the ALJ emphasized, Plaintiff testified that until 2009, he continued

working as a landscaper doing yard work and lifting 50-100 pounds, despite his subjective reports in the medical records that his back pain began much before that.  The ALJ highlighted that, contrary to Plaintiff's complaints of constant pain, Dr. Fast made special note that Plaintiff did not reposition himself or complain of pain during a 75-minute interview.  During the hearing, the ALJ also found Plaintiff evasive about how much weight he could presently lift, as well as about his duties as a forklift operator and how much weight he could lift at that time.

In short, the record supports the ALJ's conclusion that Plaintiff lacked credibility.  Because of Plaintiff's lack of credibility, every medical opinion presented must be evaluated in light of its dependence on Plaintiff's self-serving representations.  The ALJ properly did so, limiting her reliance on opinions based on Plaintiff's subjective representations of his physical condition.

**Expert medical opinions.**

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability."  *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.  Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] not treat[ed] the claimant (nonexamining physicians)."  *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician.  *Id.*  The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians.  20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as

11

to either a physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must determine a claimant's RFC based on "all relevant evidence in the record." *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding.  *Magallanes*, 881 F.2d at 751-55.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  Although an ALJ is not bound by uncontroverted opinions rendered by a plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ must tie the objective factors of the record as a whole to the opinions and findings that he or she rejects.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 2009.  Plaintiff's severe impairments were degenerative disc/joint disease of the thoracic spine and obesity.  None of these impairments or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Plaintiff was incapable of performing his prior work as a landscaper, forklift operator, or tractor driver.  However, Plaintiff was capable of performing sedentary and light unskilled work as defined in 20 C.F.R. § 404.1567(a)-(b), with the following modifications: lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand, sit, and walk up to six hours in an eight-hour work day; he can frequently climb ramps, stairs, ladders, ropes, and scaffolds; and he can frequently balance, kneel, crouch, and

crawl; but only occasionally stoop.  Accordingly, Plaintiff was not disabled, as defined by the Social Security Act.

Plaintiff contends that the ALJ erred by favoring the objective opinions of examining and non-examining physicians who agree that Plaintiff is not disabled, over Plaintiff's subjective opinion that he is disabled.  Plaintiff argues that his lack of health insurance explains the absence of supporting medical evidence.  However, the ALJ carefully analyzed the various expert opinions regarding Plaintiff's RFC, including those of the consultative physician, Dr. Georgis; and of the non-treating physicians, Dr. Fast and Dr. Reddy, as well as the treatment and other objective medical records.  The ALJ explained in detail her preference for the opinion of the physicians, whose consultative reports contemplated Plaintiff's various symptoms and diagnoses, the objective medical evidence, and his conservative treatment regime.  The ALJ appropriately gave weight to these physicians who all concluded that Plaintiff was capable of limited light work.

The ALJ limited the weight she gave to the Plaintiff's opinion since it rested primarily on Plaintiff's own unreliable account of his medical history and his reports of symptoms greater than and inconsistent with the objective medical records.  Similarly, she gave little weight to the chiropractor's opinion, primarily because Dr. Reyna's report covered a period prior to Plaintiff's alleged onset date.

This Court agrees with the ALJ's analysis.  Substantial evidence supported her determination to favor the physicians' opinions and to reject Plaintiff's opinion.  Since her analysis and conclusion were well articulated and supported by substantial evidence in the record, the ALJ did not err in her assessment of the relative credibility of Plaintiff and the various medical experts, nor in her decision to favor the opinion of the physicians over that of Plaintiff.

//

//

//

III.      **Conclusion and Order**

The Court finds that the ALJ applied appropriate legal standards and that substantial

evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against

Plaintiff.

IT IS SO ORDERED.

Dated:    **June 27, 2014**                        **/s/ Sandra M. Snyder**
                                                   UNITED STATES MAGISTRATE JUDGE